UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JASON DICKERSON, )
 )
Petitioner, )
 )  No. 7:20-CV-12-REW-HAI
v. )
 )  RECOMMENDED DISPOSITION
AMY ROBEY, Warden, )
 )
Respondents. )

\*\*\* \*\*\* \*\*\* \*\*\*

The Court now considers the petition for habeas corpus relief filed by state prisoner Jason Dickerson. Dickerson alleges three claims of ineffective assistance of counsel ("IAC") related to his 2014 convictions for murder first-degree and four counts of criminal abuse in Floyd Circuit Court. His first ground claims trial counsel should have moved for a mistrial based upon prosecutorial misconduct during closing argument. D.E. 10 at 5. His second ground asserts trial counsel should have moved for change of venue. *Id*. at 7. His third ground asserts trial counsel should have sought a continuance of the trial when a new indictment was returned just five days before trial. *Id*. at 8.

**I. Background**

The facts of the case are described by the Supreme Court of Kentucky in its ruling on Dickerson's direct appeal. *Dickerson v. Comm*., 485 S.W.3d 310, 316-19 (Ky. 2016). In that direct appeal, Dickerson "complain[ed] about the admission of evidence of his abuse of his spouse, the admission of hearsay statements made to an examining pediatrician and to an investigating detective, and several instances of alleged prosecutorial misconduct during cross-examination of

1

his expert witness and in closing arguments." *Id*. at 316. The Supreme Court found none of Dickson's claims of error required reversal. *Id*. at 335.

Dickerson then filed a motion for post-conviction relief under Kentucky Rule of Criminal Procedure 11.42, alleging various instances of IAC. The trial court held an evidentiary hearing and denied relief. Dickerson appealed, and alleged three grounds for IAC to the Court of Appeals: (1) "that trial counsel failed to request a continuance after the superseding indictment was issued;" (2) "that trial counsel should have requested to transfer venue;" and (3) "that trial counsel should have exercised peremptory strikes to remove two jurors who demonstrated prejudice." *Dickerson v. Comm*., No. 2018-CA-342-MR, 2019 WL 1870621, at *3 (Ky. Ct. App. Apr. 26, 2019). The Court of Appeals affirmed, and the Kentucky Supreme Court denied discretionary review.

Dickerson, through counsel, filed his initial habeas petition (accompanied by various documents from the state court record) on December 28, 2019, in the Western District of Kentucky. D.E. 1. The petition was transferred to this District. On September 28, 2020, the Court ordered the Clerk to strike Ms. Sullivan as counsel of record for Dickerson after Chief Judge Reeves denied her application to practice. D.E. 9. The Court further ordered Dickerson to either have replacement counsel enter an appearance or re-submit his petition under 28 U.S.C. § 2254 on a *pro se* basis. *Id.* On November 30, 2020, Dickerson filed his *pro se* § 2254 petition and a motion to appoint counsel. D.E. 10 & 11. The Court denied appointment of counsel and ordered Dickerson to show cause why his petition should not be dismissed as untimely and why his first ground for relief should not be dismissed as unexhausted. D.E. 14.

Dickerson filed a (rather late) response to the show-cause order. D.E. 15. The Court ordered the Warden to respond, but only on the issues of timeliness and exhaustion. D.E. 16. The

2

Warden responded. D.E. 21. On the existing record, the Court is equipped to issue a recommended disposition without further briefing.

Under Rule 4 of the Rules Governing Section 2254 Cases, "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." *See also* 28 U.S.C. § 2243 (permitting dismissal of a petition when "it appears from the application that the applicant or person detained is not entitled [to the writ]"). Such is the case here.

## II. Timeliness

After receiving briefing on the timeliness of Dickerson's petition, there is no dispute at this point that Dickerson missed the deadline. The Court (D.E. 14) and the Warden (D.E. 21) have analyzed the timeline and determined that over a year of untolled time elapsed between the finality of Dickerson's judgment and the filing of his federal petition. *See* 28 U.S.C. § 2244(d)(1)(A). As Dickerson recognizes, his ability to proceed hinges on whether equitable tolling of the statute of limitations is available. D.E. 15 at 1.

The one-year statute of limitations is not jurisdictional; equitable tolling may be permissible in some circumstances. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Courts apply equitable tolling "sparingly," and the burden is on the petitioner to prove its applicability. *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The issue here is similar to what the Supreme Court faced in *Holland*, in that the petitioner argues his attorney's misconduct comprises an extraordinary circumstance that prevented his

timely filing. D.E. 15. "[A]t least sometimes, professional misconduct [can] amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 560 U.S. at 651. This can happen, for example, when the lawyer "effectively abandoned" the client, or when the lawyer "failed to perform an essential service, to communicate with the client, and to do basic legal research," or when the lawyer "denied client access to files, failed to prepare a petition, and did not respond to his client's communications." *Id*. However, mere "negligence," or a "garden variety claim of excusable neglect . . . such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline . . . does not warrant equitable tolling." *Id*. at 651-52.

The Court in *Holland* found this "egregious behavior" standard may have been satisfied in that case, and remanded for further consideration. First, the attorney in *Holland* failed to file the petition on time and appeared "unaware of the date on which the limitations period expired." *Holland*, 560 U.S. at 652. These facts, standing alone, amounted to mere negligence. *Id*. However, in addition, Holland had sent his lawyers "many letters that repeatedly emphasized the importance" of getting the petition filed on time. *Id*. The lawyer also failed to inform Holland that his state appeal had concluded and "failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters." *Id*.

Similar facts appeared in the recent *Nassiri* case before the Sixth Circuit. *Nassiri v. Mackie*, 967 F.3d 544, 549 (6th Cir. 2020). There, the petitioner alleged he had "convey[ed] his concerns about his petition's timeliness to his prior counsel at least once" and had made it clear to counsel that his family wanted the petition "filed earlier." *Id*. The case was remanded for further proceedings, and has not yet been resolved.

In this case, Dickerson states:

> Mr. Dickerson retained counsel, Maureen Sullivan, to assist him in filing the present Federal Habeas Corpus petition. As the one (1) year deadline

4

>approached, he and his family repeatedly called counsel regarding the petition, the approaching deadline, and why it had not been filed. They knew the deadline was approaching but did not know the exact date. Regardless, they continually contacted Maureen Sullivan to get the petition filed. Being that counsel is a lawyer and versed in the law, she was entrusted by them to properly handling the petition. Until this Court's December 11, 2020 SHOW CAUSE ORDER, they believed the Petition had been timely filed. For the purposes of this SHOW CAUSE, the phone company was contacted and Mr. Dickerson's family attempted to obtain the phone records, but they were told the records would not be released unless a court subpoena was issued. These records will detail all the times Maureen Sullivan was contacted.

D.E. 15 at 2. The Warden argues in response that this is a "garden variety" case of attorney negligence. D.E. 21 at 5.

Here, assuming Dickerson can produce the evidence of his family's communications and attempted communications with the lawyer, the Court is inclined, in its discretion, to find equitable tolling warranted. Nevertheless, the Court finds, upon examination of the filings, that Dickerson's claims fail on the merits upon initial review. Thus, although the Court recommends that the statute of limitations be equitably tolled, it makes no difference because his claims are either unexhausted or fail on the merits under the governing standard of review.

### III. Ground One

Dickerson's first ground for relief is procedurally defaulted. Generally, a habeas petition cannot be granted unless "it appears that the applicant has exhausted the remedies available in the courts of the State." *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (quoting 28 U.S.C. § 2254(b)(1)). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007) (citing *Lott v. Coyle*, 261 F.3d 594, 601 (6th Cir. 2001)) (internal quotation marks omitted). Thus, section 2254(b)(1) requires exhaustion of *court-provided* remedies. Dickerson's first ground as to his trial counsel's

5

failure to move for a mistrial was not presented to the Kentucky Court of Appeals and is therefore unexhausted.

Dickerson defines his first ground as follows:

> Counsel provided ineffective assistance in violation of the Sixth Amendment when he failed to ask for a mistrial when the prosecutor engaged in misconduct in the closing argument. In closing argument, the prosecutor attacked the defense's medical expert as a "hired whore who comes in here and tells you all this crap and has become a multimillionaire on the backs of dead children like [the victim], is that who you're gonna believe?" Counsel objected, and the Court sustained the objection. Counsel did not ask for an admonition or a mistrial. The Court gave an admonition *sua sponte*.

D.E. 10 at 5.

In his show-cause response, Dickerson argues first that the issue was raised on direct appeal and addressed by the Kentucky Supreme Court. D.E. 15 at 2-3. The issue of the prosecutor's statement was indeed raised on direct appeal, but not in the form of an IAC claim. *Dickerson v. Comm.*, 485 S.W.3d 310, 332-34 (Ky. 2016). The Kentucky Supreme Court agreed that the prosecutor's remarks were improper, but found the remarks were not so flagrant as to render the trial fundamentally unfair, thus warranting dismissal. *Id*. at 333-34. Most importantly, tThe remarks were counterbalanced by the "overwhelmingly compelling proof of guilt." *Id*. at 334. Although the strength of the evidence was the most important factor, the Court also found it "relevant" that the trial court gave an admonition, "especially [because] Dickerson received all (or, rather, more) relief from the trial court than he sought in making his contemporaneous objection (which, as it were, was none)." *Id*. at 335. Despite finding the error was insufficiently flagrant to warrant reversal, the Supreme Court cautioned that "such comments are undoubtedly improper, far-exceed the permissible bounds of closing arguments, and will often justify reversal in future cases." *Id*. Of course, the Kentucky Supreme Court's decision here (addressing whether the prosecutor committed misconduct) relies on a different set of standards from an IAC claim.

6

The parties agree that Dickerson did raise this issue in the form of an IAC claim in his Rule 11.42 motion. D.E. 21 at 2 n.1. But the crucial question now is whether he raised the IAC claim on his appeal of the denial of his Rule 11.42 motion. He did not.

The record contains Dickerson's brief to the Court of Appeals. D.E. 10-3. This IAC claim is not included there as a ground for relief. Dickerson's claims before the Court of Appeals were:

(1) Counsel failed to move for a change of venue.

(2) Counsel failed to strike two jurors who demonstrated prejudice.

(3) Counsel failed to request a continuance or investigate after the superseding indictment altered the charges.

*Id*. at 4-5.

In its statement of the case, Dickerson's brief does describe the prosecutor's "hired whore" comments and states, "Counsel objected, and the objection was sustained. **He did not ask for any further relief.** The Court gave an admonition to the jury *sua sponte*." D.E. 10-3 at 13 (emphasis in original). Then, in describing the Supreme Court's opinion, the brief states, "Most damningly, the Court ruled that the 'hired whore' comment by the Commonwealth was objectionable but not sufficient to reverse Jason's conviction, especially since **the defense asked for no relief other than an objection**." *Id*. at 14 (emphasis in original).

But mentioning these issues in the Statement of the Case is insufficient for exhaustion. The Supreme Court has explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel,* 526 U.S. 838, 843 (1999).

Interpreting this language, the Sixth Circuit has "held that '[t]o exhaust his or her remedies, a petitioner for federal habeas corpus relief is only required to raise his claims before the state's highest court.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)). The rule in this Circuit continues to be that "[t]he exhaustion 'requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims.'" *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)).

Here, because the mistrial IAC claim was not among the three issues Dickerson named and argued in his appellate brief, Dickerson did not in fact "raise" that claim before the Court of Appeals. The appellate court was not "given a full and fair opportunity to rule on [it.]" On this IAC claim, Dickerson did not "invoke[e] one complete round of the State's established appellate review process." Yes, Dickerson mentioned the issue, even using bold lettering, in his Statement of the Case. But he in no way invited the Court of Appeals to rule on whether the failure to move for a mistrial amounted to IAC. The Court of Appeals did not rule on that IAC issue. Therefore, this Court has no appellate decision to review. Ground One is barred by the exhaustion requirement of 28 U.S.C. § 2254(b)(1).

### IV. Standard of Review for State Habeas Cases

A state prisoner has a statutory right to collaterally attack his conviction or sentence. *West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001). A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

8

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), requires "heightened respect" for factual findings and legal determinations made by state courts. *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007).

Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). All the state court's factual findings are presumed to be correct and can be rebutted only by "clear and convincing evidence." *Sinkfield*, 487 F.3d at 1016; 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam). Also, "circuit precedent does not constitute clearly established Federal law" under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012). In sum, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

9

### V. Law Governing Ineffective Assistance Claims

Grounds Two and Three allege IAC. Both of these Grounds were raised in Dickerson's post-conviction motion under Kentucky Rule of Criminal Procedure 11.42 and his appeal thereof. An ineffective-assistance-of-counsel claim presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel,

10

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

The Supreme Court has repeatedly commented on the interaction between AEDPA deference under § 2254(d) and *Strickland*'s standards of review. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under § 2254, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Id.* at 105 (citations omitted). Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Also, because the *Strickland* standard is a "general" standard, "the range of reasonable applications is substantial." *Id*.

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and accurately allocated the burden to Dickerson when it analyzed and denied his IAC claims. *See Dickerson v. Comm.,* No. 2018-CA-342-MR, 2019 WL 1870621, at *2 (Ky. Ct. App. Apr. 26, 2019). Therefore, the Court must grant full double-deference to the state court's decision under § 2254(d).

## VI. Ground Two

Dickerson's second ground is the same as his first ground before the Court of Appeals, *i.e.*, that he received IAC when counsel failed to move for a change of venue. In his habeas form, he argues:

> [This was a m]urder case involving the death of a small child and the alleged abuse of other children in the home. Jason asked his attorneys for a change of venue. Counsel Pillersdorf told him, "I know the Jurors of this town and they know me. We're where we need to be." Counsel persisted despite heavy press coverage in the region. At jury selection, most of the prospective jurors were familiar with the case.

D.E. 10 at 7. In his post-conviction appeal, Dickerson argued:

> The records of the *voir dire* proceedings are replete with examples of how knowledge of the parties, and emotional reactions to this case, permeated the community. Public opinion, coupled with the extensive publicity, and the fact that Floyd County is a small and close-knit community, made it impossible for Jason Dickerson to get a fair trial. Public opinion was so aroused that no impartial jury could have been selected.

D.E. 10-3 at 26.

According to the Court of Appeals, Mr. Pillersdorf testified at the post-conviction evidentiary hearing that "based upon his thirty-six years of experience in the practice of law in the region, Floyd County is the best venue for criminal trials because jurors are more likely to acquit than jurors in surrounding counties." *Dickerson v. Comm.*, No. 2018-CA-342-MR, 2019 WL 1870621, at *2 (Ky. Ct. App. Apr. 26, 2019). The Commonwealth's brief to the Court of Appeals also quotes Mr. Pillersdorf's testimony on this issue. D.E. 10-4 at 12-13.

The Court of Appeals analyzed this claim as follows:

> trial counsel's strategic decision not to request a transfer of venue is not deficient performance under the *Strickland* standard. *McQueen v. Commonwealth*, 721 S.W.2d 694 (Ky. 1986), is particularly instructive on this point. In *McQueen*, the Kentucky Supreme Court held that trial counsel was not ineffective for not seeking a change of venue because, in trial counsel's experience in the community and the

> practice of law, other counties' juries were more likely to recommend the death penalty in murder cases. *Id*. at 700.
>
> Here, trial counsel relied upon his thirty-six years in the practice of law in the region in deciding not to seek a change of venue. At the evidentiary hearing, trial counsel testified that he thought that it was in the best interest of a criminal defendant to be tried in Floyd County because jurors in that county are more likely to acquit than jurors in surrounding counties. Applying the reasoning of *McQueen*, trial counsel was not ineffective. Trial counsel's decision not to seek a change of venue was a reasonable trial strategy.

*Id*. at *4.

Reviewing courts begin with "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91.

Here, trial counsel articulated strategic reasons for not moving for a change of venue—as seen both in Dickerson's articulation of the claim and in trial counsel's hearing testimony. In finding no IAC under theses facts, the Kentucky Court of Appeals did not commit an unreasonable application of federal law or unreasonable determination of the facts. Accordingly, under the applicable standards of review, Ground Two fails on the merits.

## VII. Ground Three

Dickerson's Ground Three is the same as his third argument in his post-conviction appeal. He argues to this Court:

> Counsel was ineffective in failing to seek a continuance when a Superseding Indictment was brought alleging criminal abuse of another child in the home by Petitioner only five days before trial[.] The child who was added only five days before trial testified at trial as to severe and repeated abuse despite giving prior statements to the contrary. Counsel failed to seek a continuance and failed to

13

> prepare for his testimony. The child's testimony was severely damaging to Petitioner but counsel failed to cross-examine him or attempt to impeach with his prior statements.

D.E. 10 at 8.

In his appellate brief, Dickerson argued as follows:

> Five days before trial, counsel and Jason were notified via Indictment of the new charge against him relating to Braxton. Both Braxton and his father, Mr. May, had been more or less wholly positive toward Jason in his interview with police, supra. Counsel made no attempt to seek separate discovery or a bill of particulars relating to the new count in the Superseding Indictment. They chose to proceed to trial. Jason was unable to assist them in preparing to defend against Braxton's allegations, because he himself had no notice of what the new allegations were. Counsel failed to attempt to impeach Braxton's testimony with the statement Braxton had made after Watson's death to the KSP, with Jason's description of the loving and friendly letters Braxton had written to Movant earlier in his incarceration, or indeed at all.
>
> Here, counsel had scope and opportunity to investigate and impeach arguably the most credible witness in the case, and absolutely failed to do so. It is no excuse that impeaching a child is a matter of trial strategy and tactics. Cross-examining any child is a painful and ethically challenging task. It is probably fair to say that the jury can be swayed on that issue alone. However, most parents know that questioning a child, while preserving that child's dignity, can and must be done on occasion. Counsel failed to seek a continuance and failed to prepare for the sad reality of Braxton's testimony, and as a result Braxton testified very effectively before the jury.

D.E. 10-3 at 28-29.

The Court of Appeals considered these arguments and found that "trial counsel's decision not to request a continuance did not "rise to the level of deficient performance:"

> The superseding indictment was handed down on June 11, 2014, five days before the trial was set to begin. However, Dickerson and trial counsel became aware that Braxton was a potential witness on December 21, 2011, and knew of the details of his testimony on May 27, 2014, twenty days prior to the start of trial. Furthermore, Dickerson and trial counsel were well aware of the type of testimony that could be presented regarding abuse by Dickerson based on the supplemental bills of particulars naming Gladys, Cameron, and Alyssa as potential witnesses that were filed on December 20, 2013, and January 23, 2014.

14

> Additionally, Dickerson's claim that trial counsel failed to attempt to impeach Braxton on his prior statement is refuted by the record, as trial counsel did cross-examine on the inconsistencies between Braxton's prior statement and his testimony at trial. Although the cross-examination was brief, trial counsel testified at the evidentiary hearing that limiting Braxton's time on the stand was a strategic decision because his testimony was largely damaging to Dickerson. Furthermore, Dickerson fails to articulate what investigation could have been undertaken had a continuance been sought and granted. Trial counsel testified that he did not request a continuance because the superseding indictment did not "significantly change" the allegations and Dickerson had already been in jail for an extended period of time. Based on the record, Dickerson fails to overcome the presumption that trial counsel's decision not to request a continuance was a reasonable trial strategy.

*Dickerson v. Comm.*, No. 2018-CA-342-MR, 2019 WL 1870621, at *3 (Ky. Ct. App. Apr. 26, 2019); *see also* D.E. 10-4 at 16 (quoting Mr. Pillersdorf's testimony at the evidentiary hearing as to why he decided not to request a continuance).

As with Ground Two, the Court of Appeals found that the failure to request a continuance amounted to an informed strategic decision on the part of trial counsel. The decision to limit the cross-examination of the child was also an informed strategic decision. Given the deference due to strategic decisions, the Kentucky court's denial of this claim did not involve an unreasonable application of federal law or unreasonable determination of the facts. Ground Three also fails on the merits under the governing standards of review.

### VIII. Conclusion

Dickerson has not shown that the Kentucky courts were unreasonable in rejecting Grounds Two and Three. And Ground One is unexhausted. The undersigned therefore **RECOMMENDS** that his 28 U.S.C. § 2254 petition be **DENIED**.

The Court further **RECOMMENDS** that no Certificate of Appealability ("COA") should issue. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate

that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). In other words, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.

In this case, the well-reasoned opinion of the Kentucky Court of Appeals on Grounds Two and Three are entitled to capacious deference under AEDPA. Reasonable jurists would not find that these courts rendered "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). His Ground One is unexhausted and there is no state appellate court decision on this Ground for this Court to review. Dickerson's claims are insufficiently viable to deserve encouragement to proceed further.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 9th day of December, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge